IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SEOUL BROADCASTING SYSTEM )
INTERNATIONAL, INC., et al., )
)
Plaintiffs, )
) 1:09cv433 (LMB/IDD)
v. )
)
YOUNG MIN RO, et al., )
)
Defendants. )

## MEMORANDUM OPINION

Before the Court is defendants Daewoo and Ro's Motion for Reconsideration of the Court's April 8, 2011 Ruling [Dkt. No. 208]. That motion has been granted in part, to the extent that the Court has carefully reconsidered its holding. However, the Court finds no basis for altering its ruling that the plaintiffs have adequately proven ownership of the asserted works as a matter of law. Defendants' Motion for Reconsideration will therefore be denied in all other respects by an Order to be issued with this Memorandum Opinion.

### I. Background

This civil action is a copyright infringement action in which plaintiffs allege the unauthorized reproduction, rental, and sale of their proprietary television programming by the defendants, in violation of 17 U.S.C. §§ 101 et seq. Plaintiffs Seoul Broadcasting System International ("Seoul Broadcasting"), Mun Hwa Broadcasting Corporation ("MBC"), and KBS America, Inc. ("Korean Broadcasting"), are United States-based affiliates of the three

largest television broadcast corporations in South Korea. See Pl.'s Second Amend. Compl. ("SAC") ¶¶ 5-7. Each of the plaintiffs is authorized by its parent corporation to distribute Korean-language television programming to Korean expatriates in the United States through rebroadcasts and through the rental and sale of videotapes and DVDs. Id. ¶¶ 22-29. To facilitate that process and to protect its intellectual property, each of the plaintiffs has registered copyrights of the Korean-language soap operas and other Korean television shows that it distributes with the United States Copyright Office. Id. ¶¶ 30-31.

The defendants in this action are several video stores in the northern Virginia area, along with several of their owners. Defendant Daewoo Video, Inc. ("Daewoo"), which was owned and operated by defendant Young Min Ro ("Ro"), is now defunct, but it formerly maintained three video stores in Annandale, Fairfax, and Falls Church, Virginia, which did business as "Best Seller Video," "Daweoo Video-S.M.," and "Hanarum/Daewoo Video," respectively. See id. ¶¶ 8-15. Daewoo initially operated under various oral license agreements with each of the plaintiffs, whereby it was authorized to receive "master" versions of the plaintiffs' copyrighted works, and then to rent copies of those works to its walk-in customers, in exchange for paying regular license fees to the plaintiffs. Id. ¶ 32. Plaintiffs allege that those license agreements were all terminated at some point in 2008, after the Daewoo stores breached

their agreements, by, among other things, refusing to take further delivery of any of the plaintiffs' "masters." See id. ¶¶ 33, 40, 48, 56.

Plaintiffs further allege that notwithstanding the termination of their license agreements, Daewoo and its owner, Ro, continued to rent and even sell infringing and pirated copies of plaintiffs' works, which were obtained via Internet downloads and unauthorized personal copying, and/or from defendant Korean Korner, Inc. ("Korean Korner") and defendant Sun Yop Yoo ("Yoo"), the former owner of a now-defunct video store by the name of Ahn Bang Video. See, e.g., id. ¶¶ 86-89, 109-114. Plaintiffs' Second Amended Complaint therefore asserts claims of copyright infringement against the Daewoo defendants (Count One), vicarious copyright infringement against Ro (Count Three), and contributory copyright infringement against defendants Yoo and Korean Korner (Count Four). Plaintiffs also assert a claim for breach of contract against Daewoo (Count Two), alleging that Daewoo still owes unpaid license fees to Seoul Broadcasting in the amount of $2,956.00, and to MBC in the amount of $3,645.00. Plaintiffs seek injunctive relief and all applicable monetary damages in this action, including statutory damages pursuant to 17 U.S.C. § 504 for the alleged copyright violations, as well as attorneys' fees and costs. See SAC at 26-27.

On March 10, 2011, the parties filed cross-motions for summary judgment. Defendants Daewoo and Ro and defendants Korean Korner and Yoo each filed a Motion for Summary Judgment [Dkts. Nos. 171

3

and 172, respectively], arguing that judgment is appropriate in their favor because the plaintiffs have failed to demonstrate that they own the exclusive rights to the works at issue, and they therefore lack standing to pursue this action. Plaintiffs filed a Joint Motion for Partial Summary Judgment on Counts One, Three, and Four of their Second Amended Complaint, seeking judgment in their favor for defendants' direct, vicarious, and contributory copyright infringement. Finally, plaintiffs filed a Joint Motion for Summary Judgment on Defendants' Counterclaims, seeking dismissal of several antitrust (Sherman Act and Clayton Act) and breach of contract counterclaims alleged by defendants in their various Answers.

After a hearing on April 8, 2011, the Court orally denied defendants' Motions for Summary Judgment, ruling that the plaintiffs had adequately established standing to maintain this action by showing that they own the rights to the works at issue. Moreover, the Court dismissed all of the defendants' antitrust and breach of contract counterclaims with prejudice, and granted partial summary judgment of copyright infringement in favor of the plaintiffs. A bench trial is currently scheduled on the remaining issues, including willfulness and damages for copyright infringement and the remaining breach of contract claims.

Meanwhile, on April 21, 2011, defendants Daewoo and Ro filed a Motion for Reconsideration of the Court's April 8, 2011 Ruling [Dkt. No. 208]. In that Motion for Reconsideration, the defendants again advance the argument that the plaintiffs have failed to establish

4

their ownership of the rights to the works at issue, and that they therefore lack standing to bring this copyright infringement action. Defendants ask the Court to reconsider its April 8, 2011 Order, and to allow the defendants to present evidence at trial that the plaintiffs do not own the works at issue.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 54(b), a court may revisit its prior decisions and reconsider interlocutory orders, such as non-dispositive orders on motions for summary judgment, for good cause and as the ends of justice may require. See <u>Perry v. City of Norfolk</u>, 678 F. Supp. 2d 348, 374 (E.D. Va. 2009) (Davis, J.) ("The Federal Rules of Civil Procedure expressly provide a district court discretion to revise interlocutory orders prior to final judgment."); <u>see also</u> Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a [final] judgment adjudicating all the claims and all the parties' rights and liabilities."). The power to revise or reconsider interlocutory judgments "is committed to the discretion of the district court," subject to appellate review on an abuse of discretion standard. See <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514-15 (4th Cir. 2003); <u>see also</u> <u>Fayetville Investors v. Commercial Builders</u>, 936 F.2d 1462 (4th Cir. 1991).

## III. Discussion

In their Motion to Reconsider, defendants advance the same arguments that failed to persuade the Court during the April 8, 2011 hearing on the parties' cross-motions for summary judgment. Namely, defendants argue that Korean law governs ownership of the works at issue, that the works at issue can only be protected under the "works for hire" doctrine, and that under Korean copyright law, plaintiffs cannot prove that they are the legal or beneficial owners of any exclusive rights because they cannot show that the works were made under the supervision of and according to the plans set out by the plaintiffs, as is required for a "work made for hire" under Korean copyright law. However, for the reasons explained below, defendants' arguments are unavailing.

### A. Defendants have failed to cite any controlling legal authority in support of their position.

First, in support of their argument as to what is required for ownership under Korean copyright law, defendants have submitted only a single affidavit from a practicing attorney in Vienna, Virginia, who is a native of South Korea and fluent in the Korean language. See Defs. Ro & Daewoo's Mot. for Partial Summ. J. at Ex. 3 (affidavit of Jeong Tae Kim). However, Ms. Kim does not appear to have any meaningful experience in copyright litigation, nor any particular expertise with Korean copyright law. See id., Ex. 3 at 3-5 (attaching Kim's curriculum vitae). Rather, Kim simply seems to have reviewed an English-language translation of the Korean

6

Copyright Act. See id. at Ex. 2 (translation of the Korean Copyright Act). But tellingly, having done so, she is able to state only that "[t]he English translation attached to [t]his summary judgment motion is a good, *though not perfect*, translation from Korean." Id., Ex. 3 ¶ 7 (emphasis added). Such an equivocal statement undermines the defendants' claim that the translation accurately reflects the nuances of South Korea's complex copyright laws.

Moreover, even assuming that Korean copyright law requires that "works made for hire" be executed under the direction and supervision of the owners of the works, the defendants have not cited any controlling legal authority in the Fourth Circuit or this District that would require that approach to copyright protection to trump the presumption of ownership established for works timely registered with the United States Copyright Office. Under 17 U.S.C. § 501(b), "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." Furthermore, the plain language of 17 U.S.C. § 410(c) grants plaintiffs a presumption of valid ownership of the rights to works that have been timely registered with the United States Copyright Office. See 17 U.S.C. § 401(c) (providing that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the

copyright and of the facts stated in the certificate"). And in this case, plaintiffs have submitted several binders containing thousands of certificates of registration with the United States Copyright Office covering the precise works at issue here. See Joint Mot. for Partial Summ. J. by Pls. Accordingly, if 17 U.S.C. § 401(c) applies, then plaintiffs are entitled to a strong presumption that they own the works at issue and have standing to maintain this suit.

Defendants, however, have repeatedly contended that the plaintiffs' United States copyright registrations are irrelevant, citing three cases - one from the Second Circuit, one from the Central District of California, and one from a court in this District - holding that the law of the situs of creation, which in this case is South Korea, determines copyright ownership, rather than the law of the situs of infringement. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir. 1998); Splitfish AG v. Bannco Corp., 727 F. Supp. 2d 461 (E.D. Va. 2010) (Ellis, J.); Lahiri v. Universal Music & Video Distrib., Inc., 513 F. Supp. 2d 1172 (C.D. Cal. 2007).

However, Splitfish and Itar-Tass are distinguishable from the present case because those opinions did not address registered works, nor did they specifically consider the interrelation of foreign copyright law and the presumption of validity conferred upon timely-registered copyrights under 17 U.S.C. § 410(c). Indeed, neither Splitfish nor Itar-Tass involved works that had been properly registered with the United States Copyright Office; rather,

8

both opinions solely addressed *unregistered* works that had been created and first published in a foreign country. In fact, the Second Circuit in <u>Itar-Tass</u> declined to disturb the district court's holding that those plaintiffs who *had* timely registered their works in the United States *were* entitled to the 17 U.S.C. § 410(c) statutory presumption, as well as to a finding of summary judgment in their favor and statutory damages for infringement of the works. See <u>Itar-Tass</u>, 153 F.3d at 88; see also <u>Itar-Tass Russian News Agency v. Russian Kurier</u>, 1997 U.S. Dist. LEXIS 2717, at *11-12, 20 (S.D.N.Y. Mar. 10, 1997).

Defendants accordingly rest the crux of their Motion for Reconsideration on <u>Lahiri v. Universal Music</u>, a non-controlling case from a district outside of the Fourth Circuit.[1] In <u>Lahiri</u>, the Central District of California, without further analysis or explanation, ruled that a party's copyright registrations were irrelevant where the works at issue were produced outside of the

---

[1] In their Motion for Reconsideration, defendants identify a recently-decided case from the Eleventh Circuit that cited <u>Lahiri</u> with approval, <u>Saregama India v. Mosley</u>, No. 10-10626, 2001 U.S. App. LEXIS 6211 (11th Cir. Mar. 25, 2011), arguing that <u>Saregama</u> gives <u>Lahiri</u>'s holding more weight. However, the Eleventh Circuit's holding is plainly not controlling in this District. More importantly, the appellate court in <u>Saregama</u> also did not address the applicability of 17 U.S.C. § 410(c) because, once again, the <u>Saregama</u> case involved only *unregistered* foreign works, not works that had been properly registered with the United States Copyright Office. As such, the <u>Saregama</u> opinion does nothing more than affirm the proposition that the ownership of *unregistered* foreign works is determined under the law of the country of origin - a proposition that has no bearing on the instant case.

United States and later registered with the United States Copyright Office. See 513 F. Supp. 2d at 1178 ("Lahiri's copyright registration, which would ordinarily raise a presumption of copyright ownership under American law, is irrelevant here - as ownership is determined according to India's copyright law."); see also id. at 1174, n.1 ("[T]his presumption is inapplicable here, as the copyright ownership of *Thoda* is determined by India's copyright law."). The Lahiri court did not further consider the interrelation of foreign law with 17 U.S.C. § 410(c), nor did it explain how its holding squares with 17 U.S.C. § 410(c)'s admonition that "[i]n *any* judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (emphasis added). The reasoning in Lahiri has also never been adopted by the Fourth Circuit, nor by any court in this District.

Ultimately, therefore, there simply is no binding precedent in this District as to whether the presumption in 17 U.S.C. § 410(c) applies to works that were produced outside of the United States but later registered with the United States Copyright Office, or whether that presumption is irrelevant because only the law of the situs of creation controls. That matter is currently an open question of law in the Fourth Circuit. However, for the purposes of the instant case, this Court need not definitively resolve that question, as the plaintiffs have submitted ample proof of their ownership of the

works in question under *either* United States or Korean copyright law.

> **B. Even accepting defendants' legal arguments, the record still establishes that there is no genuine dispute that the plaintiffs own the works in question.**

Even if the Court were to accept defendants' arguments that Korean copyright law applies and that the plaintiffs' United States copyright registrations should be disregarded as irrelevant, defendants have still not proffered a sufficient basis for the Court to reconsider its ruling that the plaintiffs own the asserted works. Specifically, even setting aside plaintiffs' copyright registrations and applying Korean copyright law, the record evidence still establishes that there is no genuine dispute that the plaintiffs own the exclusive rights to distribute and profit from the works in question.

Defendants attempt to confuse the issue by claiming that the works can only be protected as "works for hire," and that the specific requirements of the "work for hire" doctrine have not been met under Korean copyright law. However, even under Korean law, plaintiffs need not prove that the works were works made for hire so long as they can show exclusive ownership rights through some other means or via some other doctrine of copyright ownership.[2] And in

---

[2] Defendants argued in their briefing and at oral argument on the instant motion that the works in question can only be "works made for hire" because the plaintiffs have consistently tried to hold them out as such, and their copyright registrations all (in the defendants' view, incorrectly) state that the works are "works made for hire." However, plaintiffs are entitled to

11

this case, plaintiffs have provided more than sufficient proof of such ownership, by producing written agreements with production companies and with their parent corporations in Korea in which the plaintiffs were granted exclusive licenses or were assigned the rights to the asserted works, including the right to sue to enforce the works' copyright protections. See Pls.' Opp. to Defs.' Mot. for Partial Summ. J. at Exs. 1-4. Specifically, the evidence shows that some of the works in question were produced in-house by the plaintiffs' parent companies in Korea, while others were produced by outside production companies, who then entered into written agreements with the Korean parent networks in which they assigned to the networks the exclusive rights to broadcast, reproduce, and distribute the programming. Id. The Korean parent networks, in turn, then assigned to their United States affiliates, the plaintiffs in this case, all rights to distribute and rebroadcast the works in the United States. See id. Under Korean copyright law, such transfers or assignments of copyrights are valid and fully enforceable, and plaintiffs have therefore adequately established

---

rely upon arguments in the alternative; as such, if this Court were to find that the plaintiffs' United States copyright registrations are invalid or irrelevant for any reason, plaintiffs may then show by other means that they still own the rights to the asserted works. Ultimately, it is the defendants who simply cannot have it both ways: they cannot assert in one breath that the plaintiffs' United States copyright registrations are wholly irrelevant because only Korean law applies, but then in the next breath ask this Court to look to those same copyright registrations - the very registrations that defendants have already derided as irrelevant and inaccurate - for proof that the works can only be protected as works made for hire.

standing to sue as a matter of law.  See Korean Copyright Act, Articles 45-47, 53-55; see also Pls.' Opp. to Defs.' Mot. for Partial Summ. J. at Ex. 6 ¶¶ 6-8 (declaration of Sang-Wook Han, a Korean intellectual property attorney, describing Korea's system for copyright registration and the transfer or assignment of copyrights).

In contrast to the significant evidence that the plaintiffs have provided to the Court, defendants have submitted no persuasive evidence to support their position or to rebut the plaintiffs' contentions.  Indeed, the only evidence defendants have cited, but have not even attached to their various motions, consists of several agreements between the plaintiffs and the Korean Television and Radio Writers Association ("Writers Association").  Defendants claim that those agreements somehow show that "someone other than the Plaintiffs have [sic] an interest in the works alleged to be infringed."  See Defs. Ro & Daweoo's Mot. for Reconsideration & Incorporated Mem. of Law at 8.  However, a closer examination of those agreements, copies of which were provided to the Court by the plaintiffs, reveals that they simply provide for the payment of royalties for the use of scripts authored by members of the Writers Association.  See Pls.' Opp. to Defs.' Mot. for Partial Summ. J. at Ex. 5 (attaching a copy of such an agreement as Ex. J).  Crucially, none of the agreements makes any claim as to ownership of the television programs themselves on behalf of the Writers Association or any of its members; rather, the royalties are only for the use of

13

the *scripts*, while the proprietary programming at issue here consists of various videos and broadcasts that qualify as derivative works entitled to independent copyright protection under both United States and Korean copyright law. See 17 U.S.C. §§ 101, 103(b) (providing that cinematic or motion pictures created using scripts are derivative works of the scripts and that "[t]he copyright in such work is independent of . . . any copyright protection in the preexisting material"); see also Korean Copyright Act, Article 5 ("A creation produced by means of . . . cinematization . . . of an original work (hereinafter referred to as 'derivative work') shall be protected as an independent work.").

Finally, the Daewoo defendants insist that Korean certifications of copyright registration for the plaintiffs, their Korean parent companies, and/or the production companies are required to establish the plaintiffs' valid copyright ownership. However, defendants have provided absolutely no legal authority for that proposition - no provision under the Korean Copyright Act, no Korean or United States case law, and not even an opinion from their purported Korean law expert. Plaintiffs, by contrast, have submitted an affidavit by an experienced Korean intellectual property attorney, Mr. Sang-Wook Han, stating that under the Korean Copyright Act, registration is *not* required for copyright protection. See Pls.' Mem. of Law in Opp. to Defs.' Mot. for Partial Summ. J. at Ex. 6 (affidavit of Sang-Wook Han). Instead, just as under United States copyright law, a Korean certificate of

14

copyright registration simply "has the limited effect of creating a rebuttable presumption that the registered copyright holder is the true copyright holder." Id. ¶¶ 4-5. Furthermore, registration is not required for a valid transfer or assignment of copyright unless there are competing claims to copyright ownership. See id. ¶¶ 7-8. That is not the case here, where only the plaintiffs have claimed to own the rights to the works in question, and neither the Korean production companies, the Korean Television and Radio Writers Association, nor the plaintiffs' Korean parent companies have lodged any competing claims of ownership. Accordingly, the evidence before the Court provides a more than sufficient foundation for the Court's April 8, 2011 ruling, and the Daewoo defendants have raised no new legal or factual issues that would constitute a sufficient basis to disturb that ruling.

C. **Facilitation of settlement is an inappropriate basis for reconsidering the Court's April 8, 2011 summary judgment ruling regarding ownership.**

Lastly, the Daewoo defendants have suggested that the Court should reconsider its April 8, 2011 ruling because that judgment was motivated by the hope that the ruling "might assist the parties in reaching a settlement," but instead "has had the opposite of its intended effect" because it has prompted plaintiffs to "raise[] the price of settlement." See Defs. Ro & Daweoo's Mot. for Reconsideration & Incorporated Mem. of Law at 14. The Court's April 8, 2011 ruling, however, was not primarily motivated by a desire for the parties to settle the case; rather, it represented the Court's

considered analysis of the relevant evidence and legal authority regarding copyright ownership. Moreover, considerations of furthering settlement are, and would be, an inappropriate basis upon which to award summary judgment or to reconsider a ruling of summary judgment. Finally, to the extent that plaintiffs have raised their price for settlement, that is an entirely appropriate response to the fact that plaintiffs and their attorneys have had to expend significant time, energy, and resources briefing the cross-motions for summary judgment and the instant Motion to Reconsider.

## IV. Conclusion

For all these reasons, plaintiffs have provided sufficient proof of their ownership of the rights to the works that form the basis for this copyright infringement action. There is therefore no genuine dispute that they have standing to bring this lawsuit, and defendants Ro and Daewoo's Motion for Reconsideration of the Court's April 8, 2011 Ruling [Dkt. No. 208] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 16th day of May, 2011.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge