IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
SEOUL BROADCASTING SYSTEM        )
INTERNATIONAL, INC., et al.,     )
                                 )
          Plaintiffs,            )
                                 )    1:09cv433  (LMB/IDD)
     v.                          )
                                 )
YOUNG MIN RO, et al.,            )
                                 )
          Defendants.            )
```

F I L E D
SEP 2 6 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Before the Court is plaintiffs' Motion for Attorneys' Fees and Costs [Dkt. No. 235] pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54, in which they seek $889,610.10 in attorneys' fees and $132,399.78 in costs for their successful litigation of this copyright infringement action against the defendants.  For the reasons stated below, plaintiffs' motion will be granted, although with some reductions.

## I.  Background[1]

Plaintiffs Seoul Broadcasting System International, Mun Hwa Broadcasting Corporation, and KBS America, Inc. are United States-based affiliates of the three largest television broadcast companies in South Korea.  Each plaintiff distributes Korean-language television programming to persons in the United

---

[1] The findings of fact in the Memorandum Opinion of July 27, 2011 ("Mem. Op.") are incorporated herein and form the basis of this background discussion.

States through the rental and sale of videotapes and DVDs.
Plaintiffs are the exclusive owners of valid copyrights in the
programming at issue in this action.  Defendant Daewoo Video,
Inc. ("Daewoo") is a Virginia corporation owned and operated by
defendant Young Min Ro ("Ro").  For the purposes of this
opinion, Daewoo and Ro will be collectively referred to as the
"Daewoo defendants" or "Ro."  Daewoo is no longer in business,
but during the time period relevant to this case, Daewoo
operated three video stores in this district.  Corporate
defendant Korean Korner, Inc. ("Korean Korner") is a Maryland
corporation that runs a general store that has at times sold
and/or rented videos.  Defendant Sun Yop Yoo ("Yoo") is the
former owner of a now-defunct video store located in Fairfax
County, Virginia that rented, sold, and/or distributed Korean
language videos.

All of the defendants were previously parties to oral
licensing agreements with each of the plaintiffs that terminated
in 2008 or 2009.  Under these agreements, defendants paid a
weekly licensing fee to receive master versions of the
plaintiffs' copyrighted videos and then rented copies to their
customers.  After the termination of these licensing agreements,
Ro continued to rent and sell copies of plaintiffs' copyrighted
works, including programming he had illegally pirated from the
Internet.  Korean Korner and Yoo contributed to Ro's infringing

2

activities by selling a total of approximately 24,000 DVDs of plaintiffs' copyrighted works to the Daewoo defendants.   Mem. Op. ¶ 10.

On April 8, 2011, the Court entered an order granting summary judgment on the issue of liability for direct, vicarious, and contributory copyright infringement in favor of plaintiffs on Counts One, Three, and Four of plaintiffs' Second Amended Complaint.   A bench trial on damages was held on June 20, 2011, after which the Court found the Daewoo defendants liable for $555,000, Yoo liable for $16,951, and Korean Korner liable for $21,700.   Mem. Op. at 24, 26.   The Court also found Ro and Daewoo's infringements to be "unquestionably willful," and that plaintiffs were entitled to recover their reasonable attorneys' fees and costs incurred in this litigation, but deferred entering a final judgment until the issue of attorneys' fees and costs was briefed and decided.   See Mem. Op. at 17, 27. For the reasons stated below, plaintiffs will be awarded $800,649.09 in attorneys' fees and $132,344.79 in costs.

## II.   Discussion

Under 17 U.S.C. § 505, a court has discretion to "allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."   The amount of fees awarded is within the

3

discretion of the court.  Hensley v. Eckerhart, 461 U.S. 424,

437 (1983); Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th

Cir. 1978).

In deciding whether to award such fees and costs under

Section 505, courts in the Fourth Circuit must look to a non-

exhaustive list of factors, including the motivation of the

parties, as well as whether there was a finding of bad faith or

willfulness; the objective reasonableness of the legal and

factual positions taken by the parties; and the need for

compensation and deterrence.  Rosciszewski v. Arete Assocs.,

Inc., 1 F.3d 225, 234 (4th Cir. 1993).

## A.  The individual defendants' responsibility for paying attorneys' fees

### 1.  Daewoo Defendants

Holding Ro and Daewoo responsible for most of plaintiffs'

reasonable legal fees and costs is appropriate.  The Daewoo

defendants aggressively defended this action, were the cause of

significant discovery problems, failed to make reasonable

settlement offers, were particularly willful in their infringing

activities, and must certainly be deterred from future

infringement.

In their response, defendants characterize their litigation

behavior as cooperative and reasonable by, for example,

voluntarily offering the names of Korean Korner, its owner,

Young Nam, and Yoo as sources of plaintiffs' videos, and
agreeing to a discovery extension requested by plaintiffs.  See
Resp. of Defs. Ro & Daewoo Video to Pls.' Req. for Atty's Fees
at 3-4 ("Ro. Resp.").  They dispute plaintiffs' characterization
of a discovery issue regarding access to videos stored in
defendants' warehouse (discussed further below), and argue that
plaintiffs' decision to ask the local authorities to start a
criminal investigation "created a number of problems in this
proceeding," including delay, discovery difficulties, and
undermining an "atmosphere conducive to settlement."  Id. at 5-
7.  The Daewoo defendants claim that they took reasonable legal
and factual positions and made "prompt and sincere" offers to
settle the case.  Ro Resp. at 8.

     Contrary to their argument, the record shows that the
Daewoo defendants created myriad difficulties for plaintiffs in
this litigation, including a serious failure to keep even basic
business records, which prompted a magistrate judge to grant in
part plaintiffs' Motion for Sanctions for Spoilation of Evidence
[Dkt. No. 205].  Moreover, the Court has found that Ro acted in
a manner that "was the very definition of willful" when he
infringed plaintiffs' copyrights.  Mem. Op. at 13.  Illustrative
of Ro's egregious behavior are his threats to plaintiffs'
representatives in which he told them that he would illegally
rent or sell plaintiffs' videos if they did not reduce their

weekly licensing fees.  See Mem. Op. at 13.  The "motivation of
the parties" factor certainly points to an award of attorneys'
fees against the Daewoo defendants.

In addition, Ro has a history of engaging in copyright
infringement, having previously been held both civilly and
criminally liable for conduct very similar to that at issue in
this case.  In 1990, a judgment of $307,500 was imposed on Ro
and his former business for civil copyright infringement.  See
Dae Han Video Prod., Inc. v. Chun, No. 89-1470-A, 1990 WL 265976
(E.D. Va. June 18, 1990) (Cacheris, J.).  Ro later received a
two-year probationary sentence from this Court for a criminal
copyright offense.  See United States v. Ro, No. 1:94cr164 (E.D.
Va. 1994) (Brinkema, J.).  Clearly, the need to deter Ro from
copyright infringement is very strong, justifying a significant
award of attorneys' fees against him.

Ro also failed to pursue reasonable settlement offers.
From the history of the parties' settlement offers, it appears
as though the only point at which the Daewoo defendants made a
settlement offer that involved any cash payment was after
plaintiffs were granted summary judgment on liability and just
days before the trial on damages.  See Ro Resp. at Ex. 5; Pls.'
Mem. in Supp. of Their Mot. for Atty's' Fees & Costs at 16
("Pls.' Mem.").  The offer made on June 9, 2011 was for an
amount less than the licensing fees to which the parties have

6

stipulated plaintiffs were entitled.  See Pls.' Mem. at 16.  On
June 16, defendants made a new offer to enter a consent judgment
in the amount of $175,000, $120,000 of which would not be
dischargeable in bankruptcy.  Significantly, that offer was
essentially an installment plan payable over 17.5 years, which
required that plaintiffs not enforce the judgment so long as Ro
paid at least $10,000 per year toward the debt.  See Ro Resp.
Ex. 5 at 28; Pls.' Mem. at 17.

Even if the defendants had offered to pay the $175,000 in a
lump sum, the amount is significantly less than the $555,000 in
damages awarded by the Court.  Given the finding of 37 statutory
infringements, $175,000 would constitute less than $5,000 per
infringement, well on the low end of the statutory range for
willful conduct, and considerably less than the $307,500 in
civil damages previously awarded against Ro.  See Mem. Op. at
20; Dae Han Video Prod., Inc. v. Chun, No. 89-1470-A, 1990 WL
265976, at *6 (E.D. Va. June 18, 1990) (Cacheris, J.).

The lateness of the Daewoo defendants' offer to settle
bolsters plaintiffs' entitlement to a large award, because their
attorneys' fees and costs could not have been mitigated much
earlier in the litigation.  In fact, plaintiffs had initially
demanded an extremely modest financial settlement.  The
requirement that the defendants apologize was apparently the
issue that prevented any settlement.  Defendants' refusal to

accept such a reasonable offer and the lateness of their June
2011 cash offers undermine their argument that they should not
have to pay a substantial amount of plaintiffs' attorneys' fees.

In sum, the Daewoo defendants will be responsible for most
of plaintiffs' attorneys' fees and costs.

### 2. Defendant Yoo

Defendant Yoo argues that attorneys' fees and costs should
not be awarded against her, because, among other reasons, she
acted within the licensing agreement with plaintiffs as she
understood it, took a reasonable litigation position regarding
the scope of the unwritten agreements, was a "de minimus"
contributor to the Daewoo infringements, and had tried to settle
the case on several occasions but encountered various
difficulties, such as receiving no response from plaintiffs.
Opp'n of Korean Korner, Inc. and Sun Yop Yoo to Pls.' Mot. for
Atty's Fees at 3-8 ("Korean Korner & Yoo Opp'n").

There is merit to Yoo's arguments.  Even though the Court
has found that Yoo "must have known, or at the very least w[as]
willfully blind" to Ro's unlawful activities, Mem. Op. at 21-22,
she was certainly the least culpable of the defendants in this
case, and as a result, the sum of damages awarded against her
was comparatively small.  Moreover, unlike Korean Korner and Ro,
Yoo does not have a history of engaging in copyright
infringement.  It is also clear that Yoo was interested in

8

entering into a reasonable settlement.  She claims that she
agreed to settle on February 23, 2011, but never received a
response from plaintiffs.  Korean Korner & Yoo Opp'n at 7.  Five
days before trial, on June 15, 2011, Yoo offered to settle for
$32,870 with a permanent injunction, and she promised to
apologize for her infringing actions.  See Supplementary Opp'n
of Korean Korner, Inc. & Sun Yop Yoo to Pls.' Mot. for Atty's
Fees at Ex. 2. Plaintiffs rejected that offer, which exceeded
the $16,951 in damages found by the Court.  Given Yoo's marginal
involvement in the infringement scheme, her lack of prior
violations of the copyright laws, and her reasonable efforts to
settle, the Court will not hold Yoo liable for any of
plaintiffs' attorneys' fees or costs.

### 3.  Defendant Korean Korner

Defendant Korean Korner submitted its brief in conjunction
with Yoo, and the arguments of the two parties are largely the
same; however, there are significant differences between the
circumstances of Yoo and Korean Korner, which lead the Court to
award some attorneys' fees against Korean Korner.

As with Yoo, on June 15, 2011, Korean Korner made a cash
settlement offer to plaintiffs in the amount of $18,080 and
agreed to a permanent injunction and apology.  See Supplementary
Opp'n of Korean Korner, Inc. & Sun Yop Yoo to Pls.' Mot. for
Atty's Fees at Ex. 2.  The amount Korean Korner offered,

however, was less than the $21,700 in damages for which the Court ultimately found defendant liable.

Moreover, Korean Korner and its owner, Young Nam, were previously found liable for copyright infringement and ordered to pay statutory damages and comply with a permanent injunction. See Dae Han Video Prods., Inc. v. Kuk Dong Oriental Food, Inc., No. H-87-436, 1990 WL 284748, at *1 (D. Md. Dec. 11, 1990). Lastly, during his deposition in the instant case, Nam stated that he "did not care" about the copyright warnings in plaintiffs' works, thereby displaying "a level of nonchalance towards the United States copyright system that this Court finds deeply problematic." Mem. Op. at 25. In light of this history, an award of attorneys' fees against Korean Korner is appropriate to deter Nam from future infringing conduct, by imposing a portion of plaintiffs' attorneys' fees and costs as part of the judgment against this defendant.

### B. Reasonable attorneys' fees

To determine reasonable attorneys' fees, a court must first calculate the "lodestar" figure, which is determined by multiplying the "number of hours reasonably expended on the litigation...by a reasonable hourly rate," Hensley, 461 U.S. at 433, in light of twelve factors adopted by the Supreme Court and the Fourth Circuit. These factors are:

1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3; Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008); Barber, 577 F.2d at 226 & n.28.

The Court need not address all twelve Barber factors independently, because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Freeman v. Potter, No. 7:04cv276, 2006 WL 2631711, at *2 (W.D. Va. 2006) (citing Hensley, 461 U.S. at 434 n.9). Additionally, the Court need not discuss each and every single factor in detail. "Instead, the Court discusses those factors that are relevant to its determination of the reasonable amount of attorney[s'] fees to award in each particular case." Kennedy v. A Touch of Patience, No. 2:10cv398, 2011 WL 1549245, at *8 (E.D. Va. Apr. 15, 2011). The Court may subtract any hours that appear excessive, duplicative, or unnecessary. Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513, 519-20 (E.D. Va. 2010). After calculating the lodestar figure and subtracting hours spent on unsuccessful claims, the Court "awards some

percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Grissom, 549 F.3d at 321.

Plaintiffs were collectively represented by the law firm of Gammon & Grange, P.C., which seeks a total of $1,022,009.88 in attorneys' fees and costs incurred during this litigation, through the bench trial held on June 20, 2011. This figure reflects $889,610.10 for 4,493.20 billed hours plus $132,399.78 in costs. See Decl. of Scott J. Ward ¶¶ 30, 33-34 ("Ward Decl."). Plaintiffs have stated that they declined to charge their clients for 321.70 hours of work valued at $62,713.00 to reduce their clients' legal costs. See id. ¶¶ 30, 33. Their claimed fees are summarized as follows[2]:

| Timekeeper | Hourly Rate | Hours Billed | Claimed Amount |
|---|---|---|---|
| Nancy O. LeSourd, Partner | $330 | 2.30 | $759.00 |
| Kenneth E. Liu, Partner | $215-$235 | 274.70 | $62,520.50 |
| Timothy R. Obitts, Partner | $250-$290 | 467.30 | $127,630.00 |
| Scott J. Ward, Partner | $285-$315 | 581.50 | $176,005.50 |
| Mae Cheung, Sr. Associate | $185-$215 | 1487.20 | $297,444.00 |
| Christian B. Nagel, III, Associate | $180 | 55.90 | $10,062.00 |
| David S. Nammo, Contract Paralegal | $105 | 399.10 | $40,368.50 |
| Stephanie J. Patton, Associate | $160 | 17.10 | $2,736.00 |
| Dawningstar W. Sikorski, Associate | $160-$180 | 597.80 | $105,211.00 |
| Charles M. Cannizzaro, Law Clerk | $125 | 9.30 | $1,162.50 |
| Jessica M. DeLoach, Paralegal | $135 | 203.90 | $27,526.50 |
| Mu Huang, Law Clerk | $75-$105 | 232.20 | $21,525.60 |
| Thomas P. Jubb, Litigation Support | $85 | 11.00 | $935.00 |

[2] Table adapted from Ward Decl. ¶ 33.

12

| Jo-Anne Kehmna, Paralegal | $70-$105 | 50.40 | $4,580.00 |
|---|---|---|---|
| Mary Tanner Noel, Paralegal | $100-$130 | 47.00 | $5,147.00 |
| Leslie P. Vereide, Paralegal | $95 | 19.30 | $1,833.50 |
| Angela F. Weston, Paralegal | $95-$135 | 37.20 | $4,163.50 |
| **TOTAL** | | **4,493.20** | **$889,610.10** |

1. Hourly rates

To determine the reasonable hourly rate for the lodestar figure, the party seeking attorneys' fees bears the burden of establishing the reasonableness of the claimed fees.  Cook v. Andrews, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998).  Plaintiffs' brief shows that in this action, Gammon & Grange partners billed at an hourly rate of $215 to $330, with only two partners charging over $300 per hour.  Pls.' Mem. at 12.  Associates billed between $160 and $215 per hour, whereas paralegals and other non-attorney staff billed at hourly rates between $70 and $135.  Id.  Plaintiffs correctly state that these rates are considerably below the market rates for other similarly-appointed firms in the Northern Virginia area.  See Pls.' Mem. at 22-23; see also Grissom, 549 F.3d at 323 (finding rates of $180-$250 for associates and $335-$380 for partners in a Northern Virginia firm to be reasonable).

Although the defendants have not contested any of the hourly rates charged, the Court finds that billing a law school student working as a summer law clerk at a rate of $125 per hour is excessive, and the Court will accordingly reduce the hourly

13

rate to $90 per hour, which is the middle range for a paralegal.
None of the Barber factors suggest that the other hourly rates
as asserted by plaintiffs should be adjusted by the Court.   To
the contrary, the considerable experience and ability of the
attorneys supports their claimed rates.   See Ward Decl. For
these reasons, and because defendants do not challenge the rates
presented, the Court will accept as reasonable the hourly rates
sought by plaintiffs.

### 2. Hours expended

The considerable time and labor expended in this litigation
was in large measure due to defendants' "actions in providing
inadequate and evasive discovery responses, destroying and/or
withholding information and evidence, advancing unreasonable
positions based on minimal (or, in certain instances, no)
evidence, and filing unnecessary and frivolous motions."   Pls.'
Mem. at 17.  Plaintiffs' description of their discovery
difficulties is fully supported by the record, which includes a
finding that the Daewoo defendants were liable for spoilation of
evidence by failing to keep records regarding plaintiffs' works,
after they had been put on notice of the potential for copyright
infringement litigation.  The Daewoo defendants' willful failure
to keep appropriate records substantially increased the
difficulty plaintiffs encountered in developing their case,

resulting in associated increases in attorneys' fees and costs. See Pls.' Mem. at 18.

Plaintiffs have also established that the Daewoo defendants obstructed the discovery process by providing inadequate and unresponsive discovery responses,[3] giving affidavits and testimony that contradicted the documentary evidence, and creating obstacles to discovery. In particular, plaintiffs point to the Daewoo defendants limiting their access to the defendants' warehouse where several thousand DVDs were stored.

The Daewoo defendants' lack of candor in the discovery process, by claiming that they only made copies from master DVDs, when in fact defendants had also pirated the works from online sources, required plaintiffs to review these DVDs. Pls.' Mem. at 19-20. Plaintiffs were initially allowed only eight hours of access in August 2009 to enter the Daewoo defendants' warehouse where the DVDs were stored. Plaintiffs state that between August and December 2009, they repeatedly asked defense counsel to allow them to re-access the warehouse to no avail until "[f]inally, the Daewoo defendants relented" on December 11, 2009, at which time plaintiffs were able to review the DVDs with their expert at Gammon & Grange's offices. Id. at 20. Because the expert discovery deadline was looming, plaintiffs

---

[3] See Pls.' Mem. at 19 for plaintiffs' discussion of the discovery motions they filed for consideration by the magistrate judge.

had to hire extra staff to review the DVDs within a four-day
window to meet the deadline for expert disclosures.  Id. at 20.

Defendants characterize these events quite differently.
See Ro Resp. at 5.  In his response, Ro argues that he asked
plaintiffs to defer further inspection of the DVDs until counsel
for Korean Korner and Yoo (who had just been added as
defendants) "got settled," and that the "issue of further
inspection then went dormant" until December 9, 2009 when
plaintiffs "renewed their request."  Id. at 4-5.  The Daewoo
defendants further claim that plaintiffs did not file a motion
to compel regarding the warehouse inspection.  See id. at 6.
The Court finds defendants' explanation for the delay to be
unpersuasive.  It is not at all clear why it would be necessary
to wait for Korean Korner and Yoo's attorney to be involved in
the case before plaintiffs could regain access to the warehouse.
The DVDs at issue were in Ro's possession and it was his
spoilation of evidence (which made it uncertain how many videos
were at issue) in addition to his Internet copying of
plaintiffs' works that required such extensive review of the
warehouse DVDs.  Given these circumstances, plaintiffs' actions
were reasonable.

The Court is similarly unpersuaded by the argument that
plaintiffs unduly prolonged the litigation by asking the
authorities to pursue criminal charges against the defendants.

16

See Ro Resp. at 6.  Plaintiffs were entitled to alert the
authorities to suspected wrongdoing, and defendants' assertion
that doing so "did not promote an atmosphere conducive to
settlement," id. at 6, is rather ironic given defendants'
plainly willful misconduct in this case and subsequent
spoilation of evidence, neither of which was likely to have
promoted a positive working relationship.  Moreover, the Court
agrees with plaintiffs' contentions that defendants filed
frivolous counterclaims and unreasonably declined to stipulate
to plaintiffs' proposed statement of stipulated facts and to any
exhibits before summary judgment.  See Pls.' Mem. at 20-22.
Defendants' meritless counterclaims and unreasonable failure to
cooperate in pretrial matters caused plaintiffs' attorneys to
expend significant additional efforts, further supporting the
reasonableness of the fees incurred.

    The results a party obtains in litigation inform the
Court's judgment of the reasonableness of attorneys' fees.
Indeed, the "degree of success" of a party shows the extent to
which the efforts of that party's attorneys are correlated with
benefit to their clients.  See Hensley, 461 U.S. at 430 n.3.
Plaintiffs have prevailed at every stage of this litigation,
including on discovery motions, findings of infringement at
summary judgment, dismissal of all of defendants' counterclaims,
and the finding of Ro's willfulness.  See Dkt. Nos. 156, 205,

17

207, and 240.   To further evaluate plaintiffs' degree of
success, the Court requested that the parties provide details of
their settlement negotiations to evaluate whether it would have
been more beneficial to plaintiffs to have accepted defendants'
offers to settle.   As discussed above, neither Korean Korner nor
the Daewoo defendants made cash offers that approximated the
damages ultimately awarded at trial, and the cash offers that
were made were done so on the eve of trial.   As such, plaintiffs
acted reasonably in declining to accept such offers and to
instead proceed to trial; however, the total amount of
attorneys' fees sought exceeds the total damages recovered by
nearly fifty percent, a fact which calls for some reduction.

In addition, a combination of several other Barber factors
supports a downward adjustment of attorneys' fees awarded.
Although plaintiffs claim that they encountered especially novel
and difficult questions requiring highly skilled attorneys, see
Pls.' Mem. at 22, the legal issues in this litigation were not
uniquely problematic.   Furthermore, there is no suggestion that
plaintiffs' attorneys were precluded from pursuing other
employment as a result of this litigation or that plaintiffs'
case was especially undesirable.

Plaintiffs' counsel are seeking $889,610.10 in attorneys'
fees to obtain $593,651 in damages.   In the course of
representing their clients, the law firm billed for overlapping

18

services. For example, billing entries for November 13, 2009, November 30, 2009, December 1, 2, 3, and 9, 2009, January 15, 2010, February 18, 2011, April 8, 2011, May 6, 2011, and June 20, 2011 show that multiple personnel billed for attendance at the same hearing or deposition. Given duplicative billing, the excessive hourly rate for the summer law clerk, and the actual amount of damages obtained, an overall reduction of ten percent will be made to the attorneys' fees claimed, reducing that amount to $800,649.09.

## B. Costs

In the documentation submitted to the Court, plaintiffs have broken down their expenses related to this litigation into specific line items; however, plaintiffs did not apportion the costs to specific defendants. Plaintiffs seek a total of $132,399.78 in costs in the pending motion and have indicated that they will petition the Clerk for an additional $29,891 after entry of a final judgment pursuant to 28 U.S.C. § 1920, Fed. R. Civ. P. 54, and Local Rule 54(D). Once again, defendants have not objected to any of the costs claimed by plaintiffs. Plaintiffs seek the following costs[4]:

---

[4] This table is taken from Ward. Decl. ¶ 34.

| Disbursement Type | Dollar Amount |
|---|---|
| Photocopies | $10,076.76 |
| Records | $565.28 |
| Fees of the Clerk | $175.00 |
| Private Process Server | $2,877.20 |
| Expert (Discovery, Above Standard Rate) | $105,801.49 |
| Delivery/Messenger Services | $952.50 |
| Postage | $113.96 |
| PACER Charges | $234.96 |
| Long Distance Telephone Calls | $66.06 |
| FedEx | $342.19 |
| Parking for Attendance at Hearings/Attorney Travel Costs | $549.99 |
| Contract Attorneys/Support Staff | $10,106.25 |
| Miscellaneous | $538.14 |
| Total | $132,399.78 |

The categories of expenses and the amounts sought are reasonable, given the circumstances described above. However, the Court will reduce the award of travel and parking costs by ten percent to compensate for the duplication of attorneys who attended hearings and depositions. Accordingly, the $549.99 sought by plaintiffs for parking and travel costs will be reduced by $54.99 to $495.00.

## Conclusion

For the above-stated reasons, plaintiffs will be awarded a total of $800,649.09 in attorneys' fees and $132,344.79 in costs. Ro and Daewoo Video will be liable for all but $40,000 of these fees and all but $10,000 of these costs, Korean Korner

will be liable for $40,000 of the fees and $10,000 of the costs,[5]

and Yoo will not be liable for any of plaintiffs' attorneys'

fees and costs.   An order to this effect will issue with this

Memorandum Opinion.

Entered this 26th day of September, 2011.


Alexandria, Virginia


                                        /s/ LMB
                              _____
                              Leonie M. Brinkema
                              United States District Judge

---

[5] It is impossible to determine exactly which costs were directly
attributable to Korean Korner; however, given the interconnected
issues, an estimate of $10,000 representing costs solely dealing
with Korean Korner appears reasonable.